UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LOREDANA TOMICI,

               Plaintiff,

  – against –

NEW YORK CITY DEPARTMENT OF
EDUCATION,

               Defendant.

**MEMORANDUM, ORDER
AND JUDGMENT**

11-CV-2173

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 1 1 2014 ★

BROOKLYN OFFICE

**Appearances:**

For the Plaintiff:

    Locksley O. Wade
    Law Office of Locksley O. Wade, Esq.
    New York, New York

For the Defendant:

    Isaac Klepfish
    Of Counsel
    New York City Law Department
    New York, New York

*Seal prior memorandum dated 12/19/12 and file and docket this redacted memorandum in its place.*

*So ordered*

*[signature]
3/24/14*

1

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I.   Introduction ...................................................................................................................... 3

II.  Facts ................................................................................................................................ 3

   A.  Parties ......................................................................................................................... 3

   B.  Tomici's First Year and a Half at Ridgewood Intermediate School 93 ..................... 4

   C.  ███████████ .......................................................................................................... 4

   D.  QTEL Workshop ....................................................................................................... 5

   E.  Early March Classroom Observations and Feedback ................................................ 6

   F.  Discipline for Leaving QTEL Workshop .................................................................. 7

   G.  March 19, 2009 Letter .............................................................................................. 8

   H.  Plagiarism Incident ................................................................................................... 9

   I.  Request for FMLA Leave ......................................................................................... 12

   J.  Termination .............................................................................................................. 14

   K.  Review ..................................................................................................................... 16

   L.  Animus .................................................................................................................... 17

      1.  Discriminatory Comments .................................................................................. 17

      2.  Differential Treatment of Others ........................................................................ 17

III. Procedural History .......................................................................................................... 18

IV.  Summary Judgment Standard ......................................................................................... 18

V.  State and City Claims Dismissed .................................................................................... 19

   A.  Law ......................................................................................................................... 19

   B.  Application of Law to Facts .................................................................................... 21

VI.  FMLA Claims ................................................................................................................ 23

   A.  No Interference in Violation of the FMLA ............................................................ 23

      1.  Law ...................................................................................................................... 23

      2.  Application of Law to Facts ................................................................................ 25

   B.  No Retaliation for Taking FMLA Leave ................................................................ 27

      1.  Law ...................................................................................................................... 27

      2.  Application of Law to Facts ................................................................................ 28

         a)  *Prima Facie* Case ......................................................................................... 28

         b)  Legitimate, Nondiscriminatory Justification ............................................... 29

         c)  Pretext ........................................................................................................... 30

VII. Conclusion ..................................................................................................................... 31

## I. Introduction

Loredana Tomici sues her former employer, the New York City Department of Education ("DOE"). She was discharged as a New York City probationary public school teacher while on medical leave ███████████████ .

The Family Medical Leave Act ("FMLA") prohibits interference with, and retaliation for, taking medical leave. ███████████████████████████████████████

███████████████████████████

Defendant moves for summary judgment and dismissal. Tomici cross-moves for summary judgment on her FMLA claim.

Failure to file a timely notice bars claims under state and city law. Evidence will not support her remaining FMLA claims.

Defendant's motion is granted. Plaintiff's motion is denied. The case is dismissed.

## II. Facts

The following statement of facts draws all reasonable inferences in favor of the plaintiff. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

### A. Parties

In August 2007, plaintiff began working as a probationary English language arts teacher at DOE's Ridgewood Intermediate School 93 ("I.S. 93"). Decl. of Isaac Klepfish in Supp. of Def.'s Mot. for Summ. J. ("Klepfish Decl.") Ex. G (Annual Professional Performance Review and Report, dated June 25, 2008), CM/ECF No. 27-7. Her period of probation was three years. *See* N.Y. Educ. L. § 2573(1). During a probationary period, a teacher lacks tenure and is essentially an at-will employee who the board of education can fire upon the recommendation of the superintendent of schools, so long as the decision is not arbitrary or capricious. *See Frasier*

3

*v. Bd. of Educ. of City Sch. Dist. of City of New York*, 71 N.Y.2d 763, 765 (1988) (analyzing N.Y. Educ. L. § 2573(1)).

The principal of I.S. 93 was Edward Santos. Def. 56.1 ¶ 2. Also providing supervision at I.S. 93 were three assistant principals: Frederick Wright, Catherine Fratangelo, and Theresa Rosato-Lopes. *Id.* at ¶¶ 3-5.

### B. Tomici's First Year and a Half at Ridgewood Intermediate School 93

Tomici was rated "Satisfactory" for her first year and a half as a probationary teacher. *See* Klepfish Decl. Ex. II (Chancellor's Committee Report, dated May 18, 2009), CM/ECF No. 27-35; Ex. G (Annual Professional Performance Review and Report, dated June 25, 2008), CM/ECF No. 27-7. During this period Rosato-Lopes observed plaintiff's teaching on at least two occasions. In October of 2007, Tomici's third month on the job, Rosato-Lopes rated Tomici's lesson as satisfactory overall and remarked in her Observation Report that "[i]t is a pleasure to work with you in your first year as a teacher." Klepfish Decl. Ex. E. (Observation Report, dated Nov. 1, 2007), CM/ECF No. 27-5. She also thanked Tomici "for the dedication you show the students of I.S. 93." *Id.* Rosato-Lopes's impression of Tomici did not change during the initial months of Tomici's second year on the job. An Observation Report authored by Rosato-Lopes in September 2008 thanked Tomici for "working to develop the skills and strategy to meet the needs of your [English Language Learner] students." Klepfish Decl. Ex. H (Observation Report, dated Sept. 5, 2008), CM/ECF No. 27-8.

### C. █████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████



### D. QTEL Workshop

In late February 2009, Tomici attended a professional development workshop for DOE employees offered by Quality Teaching for English Learners ("QTEL"). In preparation, plaintiff's classroom instruction was observed on February 2, 2009 by Santos and Fratangelo. Klepfish Decl. Ex. J. Two days later, on February 4, 2009, Fratangelo emailed Tomici summarizing "some points that . . . are in need of immediate attention." *Id.* Tomici replied promptly, stating that she saw "some validation in your observation but . . . [felt] some points need to be discussed in further detail." *Id.*

The QTEL workshop lasted several days long. Pl. Decl. Ex. 4 ("Rosato-Lopes Dep."), CM/ECF No. 38-4, at 26; Tomici Dep. 26.

█████████████████████████████████████████

█

Prior to departing the workshop on February 23rd, Tomici notified two colleagues that she would not be returning following the lunch break. Tomici Dep. 26-27. She did not notify any workshop facilitators that she was leaving early; nor did she notify the assistant principals of I.S. 93 or Principal Santos. Def. 56.1 ¶¶ 22-24, 26.

Rosato-Lopes learned of plaintiff's absence through Tomici's colleagues. Rosato-Lopes Dep. 25. Rosato-Lopes then reported the incident to Santos. Def. 56.1 ¶ 27.

Tomici took a sick day on February 24th and returned to work on February 25, 2009. Tomici Dep. 27.

### E. Early March Classroom Observations and Feedback

A series of observations of plaintiff's classroom and unsatisfactory ratings followed. An observation from Wright on March 3, 2009 rated plaintiff unsatisfactory. Klepfish Decl. Ex. K (Informal Observation Report, Mar. 4, 2009), CM/ECF No. 27-11. In his report, Wright noted that Tomici's lesson plan was inadequate and, in particular, failed to "incorporate the professional development you have received from the [English Language Arts] and [English as a Second Language] departments *over the last two years.*" *Id.* (emphasis in original). Wright continued to observe Tomici's lessons in March and found her to be struggling with lesson plans. Wright Dep. 50.

A meeting between plaintiff, Santos, Wright and Rosato-Lopes took place on March 4, 2009. Klepfish Decl. Ex. L (Ltr. from Rosato-Lopes to Tomici, dated Mar. 5, 2009), CM/ECF No. 27-12. The next day, the school's administrators "put additional structures in place to support [Tomici's] professional growth." *Id.* Tomici was required to submit weekly lesson

plans to Rosato-Lopes each Monday and to attend "scheduled inter-visitation periods" with assigned teacher-mentors. *Id.*

On March 9, 2009, Wright and Fratangelo conducted a walkthrough of Tomici's classroom. Klepfish Decl. Ex. T (Ltr. from Wright to Tomici, dated Mar. 12, 2009), CM/ECF No. 27-20. Wright then wrote a letter admonishing Tomici for failing to make lesson plans available to supervisors upon request. *Id.* Tomici signed the letter, acknowledging she received it, and did not object to its contents. *Id.* Nearly three years later, at her deposition, Tomici disputed that teachers were actually required to maintain lesson plans in paper format to be produced to supervisors upon their request. Tomici Dep. 63.

### F. Discipline for Leaving QTEL Workshop

About March 9, 2009, Tomici was informed by Santos that she would be docked pay for an unauthorized absence because she left the QTEL training session on February 23, 2009 without advising her supervisors. Def. 56.1 ¶ 41; Tomici Dep. 27. At that time, it was not known to Santos that Tomici had a medical excuse for leaving the session. Pl. Decl. Ex. 2 ("Santos Dep."), CM/ECF No. 38-2, at 57.

At a meeting with Santos to discuss her purported insubordination and punishment, Tomici informed him that she "had medical documentation specifying why [she] left" █

████████████████████████████████████████████████████████

█████████ Tomici Dep. 28-29. Tomici then submitted to I.S. 93's payroll secretary a note from the physician who treated her on February 23, 2009. Klepfish Decl. Ex. O (Note from Daniel Rahman), CM/ECF No. 27-15.

On March 13, 2009, after Santos was informed that a union representative must be present for a disciplinary proceeding, Santos held another meeting with Tomici so her union

representative could attend. Santos Dep. 57-58. Present at the meeting were Santos, Wright, Rosato-Lopes, Tomici, and her union representative. Tomici Dep. 30-31. Having considered plaintiff's medical reason for leaving the workshop early, Santos recorded her absence as one for which she would still be paid, but counted it against sick leave. Klepfish Decl. Ex. O (Note from Daniel Rahman, dated Feb. 23, 2009), CM/ECF No. 27-15; Def. 56.1 ¶¶ 54-55. He summarized his decision in a letter to Tomici that was placed in her file. Klepfish Decl. Ex. Q (Ltr. from Santos to Tomici, dated Mar. 9, 2009), CM/ECF No. 27-17. The letter noted that "in the future, you must obtain clearance from an I.S. 93 supervisor to leave an assigned training site, which is an extension of your school building." *Id.* Tomici signed the bottom of the letter, signifying she received a copy of it, without any objection. *Id.*

Plaintiff contends that Santos's decisions to hold a meeting and to write a disciplinary letter even after Tomici provided a medical excuse for her absence was motivated by a desire "to create a false record for disciplinary action against [her]." Pl.'s Resp. to Rule 56.1 Statement ¶ 46.

### G. March 19, 2009 Letter

In a letter dated March 19, 2009, Rosato-Lopes notified Tomici of several deficiencies in her professional conduct, including the following:

- Tomici failed, upon Rosato-Lopes's request, to forward Rosato-Lopes "the work in progress and completed work folders" for two students transferred from plaintiff's class to another teacher's. Klepfish Decl. Ex. U (Ltr. from Rosato-Lopes to Tomici, dated Mar. 19, 2009), CM/ECF 27-22. When Rosato-Lopes attempted to retrieve the materials herself, she "observed that there is no record of work in the files of your students since September." *Id.* Tomici contends that she had already transferred the materials to the two students' new teacher and that Rosato-Lopes "knew about this and still wrote the [letter] anyway." Tomici Dep. 99.

- Tomici failed, upon Rosato-Lopes's request, to maintain records of the work—for example, drafts, revisions, finished work, etc.—of her students related to "the Journalistic Feature Articles that students worked on for approximately six weeks."

Klepfish Decl. Ex. U (Ltr. from Rosato-Lopes to Tomici, dated Mar. 19, 2009), CM/ECF 27-22. Rosato-Lopes further noted that Tomici failed to provide feedback to her students on the "Journalistic Feature Articles" and had no explanation for this failure. *Id.*

- Tomici failed to turn in her "DYO scan sheets. . . . for any of [her] classes." *Id.*

Rosato-Lopes closed her letter by reminding Tomici that "failure to carry out pedagogical responsibilities can lead to disciplinary action and an unsatisfactory rating." *Id.* Without objection, Tomici signed the the letter on March 20, 2009, acknowledging that she understood that "a copy of this letter will be put into [her] personnel file." *Id.*

### H. Plagiarism Incident

In late March, while reviewing student work posted on bulletin boards in the hallways of I.S. 93, Rosato-Lopes noticed the written work of one of Tomici's students that was "exceptionally written." Def. 56.1 ¶¶ 63-64. Concerned that the written work was plagiarized, Rosato-Lopes ran the content of the written work through an Internet search engine and discovered it had been copied. *Id.* ¶ 65. Tomici had given the student a grade of three on a four-point scale. Klepfish Decl. Ex. Y (Mem. from Rosato-Lopes to Santos, dated Mar. 26, 2009), CM/ECF 27-25.

March 25, 2009 was Tomici's last day teaching at I.S. 93. Tomici Dep. 120.

That day, Rosato-Lopes met with Tomici, where Tomici stated that she was unaware the student had copied work. *Id.* Rosato-Lopes requested that Tomici produce, by the end of the day, the student's "sourcebook, drafts, evidence of revision, and feedback she provided in anticipation of a meeting with [the student's] parent." *Id.*

When Rosato-Lopes finished meeting with Tomici, the student accused of plagiarism was in a class taught by I.S. 93 teacher Paula Oliveri. Tomici Dep. 106-08. As Oliveri described the

9

incident in a written statement dated March 25, 2009, at the start of class she observed the student, "sit at his desk and begin taking notes on a computer-printed document." Klepfish Decl. Ex. AA (Written Statement of Oliveri, dated Mar. 25, 2009), CM/ECF No. 27-27. Ten minutes into the class, Oliveri received a call in her classroom from Tomici.

The contents of Tomici's conversation with Oliveri and what followed that conversation are disputed.

Relying on contemporaneous written statements of Rosato-Lopes, Oliveri, and the accused student, defendant asserts that, on the phone with Oliveri, Tomici requested to speak to the student and rejected Oliveri's offer to send the student to Tomici's classroom. Def. 56.1 ¶ 70; *see also* Klepfish Decl. Exs. X (Mem. from Rosato-Lopes to Santos, dated Mar. 26, 2009), CM/ECF No. 27-25; AA (Written Statement of Oliveri, dated Mar. 25, 2009), CM/ECF No. 27-27; BB (Written Statement of Student, dated Mar. 25, 2009), CM/ECF No. 27-28. The DOE claims that, on the phone, Tomici directed the student to effect falsifying by "put[ting] notes or a draft in his sourcebook to demonstrate that he did not plagiarize." Def. 56.1 ¶ 80.

By contrast, Tomici testified that she called Oliveri's classroom hoping to notify the student that Rosato-Lopes wanted to see his sourcebook. Tomici Dep. 106-08. Tomici asserts that she—not Oliveri—proposed that the student be sent to Tomici's classroom, and that Oliveri—not Tomici—suggested that Tomici speak to the student on the phone. Tomici Dep. 106-07. According to Tomici, once on the phone with the student, she instructed him "that Ms. [Rosato-] Lopes wanted to see a source book by the end of the day and that he would have to drop it off in my classroom before he left homeroom." *Id.* She denies that she told the student "to try to work with the sourcebook to indicate that he had done some work on a certain article" or that she "coach[ed] him in how to avoid showing that he was plagiarizing." *Id.* at 108.

There is no dispute that after the student got off the phone, he returned to his seat and resumed taking notes on the computer-printed paper while other students were engaged in other activities. Def. 56.1 ¶ 70. After some time during which the student was "writing very quickly," Oliveri confiscated the computer-printed paper and the student's sourcebook, and called Rosato-Lopes. Rosato-Lopes Dep. 15, 23; Def. 56.1 ¶¶ 70, 75. When Rosato-Lopes met with the student later that day, "[h]e admitted to plagiarizing the work" and "explained that Ms. Tomici told him that she would help him get out of trouble by giving him the chance to put work into his sourcebook." Klepfish Decl. Exs. X (Mem. from Rosato-Lopes to Santos, dated Mar. 26, 2009), CM/ECF No. 27-25.

After Tomici spoke to the student on the phone, she felt ill, left her classroom, and went to the nurses' office. Tomici Dep. 113. When she arrived at the nurses' office, two emergency medical technicians ("EMTs") were there responding to an emergency call involving a student. Rosato-Lopes Dep. 35-36. Tomici "nearly fainted" and "hit [her] head on the wall." Tomici Dep. 115. While the two EMTs examined her, Tomici claims to have heard the EMTs remark "we are taking her" before placing her in a wheelchair and bringing her to the hospital. Tomici Dep. 114-16.

As indicated by the EMT's "prehospital care report," Tomici's presumptive diagnosis was anxiety. Klepfish Decl. Ex. W (FDNY Prehospital Care Report, dated Mar. 25, 2009), CM/ECF No. 27-23. Tomici told the EMTs that she had been previously diagnosed with anxiety, felt tingling in her fingers, believed she was going to pass-out, and had trouble breathing. *Id.* She told the EMTs that "at work they harass [me]." *Id.*

On March 25, 2009, after learning about the plagiarism incident, Principal Santos wrote a note, to be hand-delivered to Tomici by his assistant, Laura Bodaro, requesting that plaintiff

"meet with me . . . to discuss an allegation of professional misconduct." Def. 56.1 ¶ 84. He intended to speak to her about the plagiarism incident. Bodaro has not provided a deposition, but Rosato-Lopes states that, once in possession of Santos's note, Bodaro advised Tomici by telephone that she was bringing her a note. Rosato-Lopes Dep. 36-37; Santos Dep. 105. The note was never delivered because Tomici "refused to accept [it]" from Bodaro. *Id.* Asserted by defendant—and disputed by plaintiff—is that Tomici left her classroom after learning from Bodaro that a note was en route to Tomici from Santos. Def. 56.1 ¶ 87.

Tomici admits that she told the student accused of plagiarism to "take his draft and write down the parts he didn't plagiarize in his sourcebook" but denies aiding the student in a scheme to avoid getting caught for plagiarism. Tomici Dep. 111. She also denies refusing acceptance of the note from Bodaro, contending that Bodaro arrived with the note "when the EMTs were carrying me out" and the EMTs "pushed" Bodaro away, preventing delivery. Tomici Dep. 116.

## I. Request for FMLA Leave

Tomici was taken to Wyckoff Hospital in Brooklyn by the EMTs. Def. 56.1 ¶ 95. She was evaluated for "syncope," which is "a temporary loss of consciousness due to the sudden decline of blood flow to the brain." *See* Nat'l Inst. of Neurological Disorders and Stroke, Nat'l Insts. of Health, "NINDS Syncope Information Page," http://www.ninds.nih.gov/disorders/syncope/syncope.htm (last visited Dec. 12, 2012). ███

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████

She checked out of Wyckoff hospital on March 26, 2009, ██████████████████
██████████████. Tomici Dep. 118.

12

On March 26th or 27th, plaintiff contacted the payroll secretary at I.S. 93, Elizabeth DePergola, and explained that "I need time off and . . . asked her to explain the protocol" for requesting time off. Tomici Dep. 129. On the phone, DePergola informed Tomici that she could take a combination of Cumulative Absence Reserve ("CAR") and grace time—i.e., paid sick and personal days—and that "if she passed the 30 days [limit for CAR and grace time] she will need to fill out an OP-160 [form] and FMLA application." Klepfish Decl. Ex. KK (Email from DePergola to Unknown Recipient, undated), CM/ECF No. 27-37.

At 9:53 a.m. on March 27th, DePergola emailed Tomici:

> The purpose of this e-mail is for me to clarify your GRACE Period. Family Medical Leave Act (FMLA) starts the minute you start using your CAR days, borrow days, and/or Grace Period (this is the paid portion of FMLA). All absences for sick time must be certified. The unpaid potion [sic] of your FMLA leave starts after your Grace Period is up. I need proper medical documentation to confirm your leave. FMLA is only for 12 weeks.
>
> I need to know if you are planning on returning after your GRACE period, so I can code you correctly.

Klepfish Decl. Ex. LL (Email from DePergola to Tomici, dated Mar. 27, 2009), CM/ECF No. 27-38. DePergola included in her email the codes for when an employee plans to return to work following her grace period and when an employee plans not to return to work following her grace period. *Id.*

Nearly two hours later, Tomici replied to DePergola's email and notified her that "I cannot tell you if I will return [after my grace period] because that is up to my doctor to decide based on my treatment. . . . You will receive a letter on Monday that certifies my leave during the grace period." Klepfish Decl. Ex. MM (Email from Tomici to DePergola, dated Mar. 27, 2009), CM/ECF No. 27-39. At this point, Tomici and DePergola had a mutual understanding that Tomici wanted to take her grace period through the end of April. Def. 56.1 ¶ 115.

13

On April 1, 2009, Tomici submitted to DePergola a doctor's note but was advised by DePergola on the same day that the note was "not acceptable." Def. 56.1 ¶¶ 117-18. The note sought four weeks leave for Tomici commencing March 24, 2007—that is, one day before Tomici left I.S. 93 with the EMTs—and referred to a doctor's visit on that date. Def. 56.1 ¶ 119. The note also lacked any medical diagnosis.

On or about April 23, 2009, Tomici submitted a second doctor's note stating that "she continues to be symptomatic and is not medically able to return to work." Klepfish Decl. Ex. QQ (Letter from Dr. Vinod K. Dhar, MD, dated Apr. 23, 2009), CM/ECF No. 27-43. It recommended an additional nine weeks of leave. *Id.* On the same day, Tomici submitted a completed form OP 160 for Leave for Restoration of Health from April 1, 2009 through June 24, 2009. Klepfish Decl. Ex. RR (Form OP 160, dated Apr. 23, 2009), CM/ECF No. 27-44.

By letter dated June 12, 2009, the DOE Leave Office approved plaintiff's request for grace period leave from March 26, 2009 through April 30, 2009. Klepfish Decl. Ex. TT (Ltr. from DOR HR Connect to Tomici, dated June 12, 2009), CM/ECF No. 27-46.

### J. Termination

On March 26, 2009, the day after Tomici's last day at I.S. 93, Rosato-Lopes described in a memorandum for Santos how, following her meeting with Tomici on March 25th, Tomici called Oliveri's classroom and spoke to the student accused of plagiarism. Klepfish Decl. Ex. Y (Mem. from Rosato-Lopes to Santos, dated Mar. 26, 2009), CM/ECF 27-25. The thrust of the memorandum was that the student, when confronted, "admitted to plagiarizing the work" and "explained that Ms. Tomici told him that she would help him get out of trouble by giving him the chance to put work into his sourcebook." *Id.* Requesting that Santos "[p]lease note that [Tomici's conduct] is indicative of a pattern," Rosato-Lopes commented that she had recently

observed, in retrieving the work folders for two students transferred out of Tomici's class, that "[t]he folders lacked the appropriate evidence of student work or feedback." *Id.*

On March 31, 2009, while Tomici was on leave, Santos sent her by certified mail a letter requesting that she meet with him on Friday, April 3, 2009 "to discuss an allegation of professional misconduct." Klepfish Decl. Ex. DD (Ltr. from Santos to Tomici, dated Mar. 31, 2009), CM/ECF 27-30. "Due to the disciplinary nature of the meeting," Santos informed Tomici of her right to bring her union representative. *Id.* He explained that, "[i]f you are not present for this meeting, I will weigh my findings and make my decision in your absence." *Id.* Tomici received the letter but did not show up for the meeting. Klepfish Decl. Ex. EE (Ltr. from Santos to Tomici, dated Apr. 6, 2009), CM/ECF 27-31.

By letter dated April 6, 2009, Santos summarized his findings, reached in Tomici's absence, regarding the plagiarized work. *Id.* He concluded that Tomici:

> engaged in professional misconduct when [she] interfered with an investigation concerning plagiarism and deliberately encouraged [the student] to place material in his sourcebook to make it appear he had done the work by himself. These findings also indicate an attempt to make it appear as though [she] had been working with [the student] toward completion of a writing project when in fact [she] had not.

*Id.* Santos based his findings on interviews with the student, Oliveri and Rosato-Lopes. *Id.* He informed Tomici, in the letter, that "[t]his misconduct may lead to further disciplinary action including unsatisfactory rating and/or termination of your probationary term." *Id.* On the same day, Santos completed his annual performance review of Tomici for the 2008-2009 school-year. Klepfish Decl. Ex. FF (Annual Professional Performance Review 2008-2009, dated Apr. 6, 2009), CM/ECF 27-32. He rated her "unsatisfactory" for the year and recommended "discontinuance of probationary service." *Id.*

On April 7, 2009, Community Superintendent Catherine M. Powis wrote Tomici to inform her that "on May 7, 2009, I will review and consider whether your services as a probationer be discontinued as of the close of business May 7, 2009." Klepfish Decl. Ex. GG (Ltr. from Powis to Tomici, dated Apr. 7, 2009), CM/ECF 27-33. On May 7, 2009, Community Superintendent Powis made effective the termination of Tomici's probationary period and terminated her temporary teaching license. Klepfish Decl. Ex. HH (Ltr. from Powis to Tomici, dated May 7, 2009), CM/ECF 27-34.

### K.    Review

Administrative review of Tomici's termination followed. On May 14, 2010, the Chancellor's Committee in the DOE Office of Appeals and Reviews held a hearing "to review the cumulative . . . rating of unsatisfactory for the period ending April 6th, 2009 and to review the recommendation to discontinue service for [plaintiff] effective as of May 7th, 2009." Pl. Decl. Ex. 5 (Tr. of Review of Rec. to Discontinue Probationary Service for Loredana Tomici, May 14, 2010), CM/ECF No. 44-5, at 4. Present at the hearing was Santos, Tomici and her union representative, who had an opportunity to cross-examine Santos on the record. *Id.* at 5. The Chancellor's Committee "unanimously concur[red] with the recommendation to rate [Tomici] 'Unsatisfactory' [but] the Committee d[id] not concur with the recommendation to discontinue probationary service." Def. 56.1 ¶ 108.

After reviewing the Chancellor's Committee findings, Community Superintendent Madelene S. Chan reaffirmed, in a letter dated January 6, 2011, both Tomici's unsatisfactory rating and discontinuance of probationary service as of May 7, 2009. Klepfish Decl. Ex. JJ (Ltr. from Chan to Tomici, dated Jan. 6, 2011), CM/ECF 27-36.

16

Tomici did not commence a proceeding under Article 78 of the New York Civil Practice Law to challenge any of the DOE's disciplinary actions. *See* Summ. J. Hr'g Tr. 5, Dec. 17, 2012.

### L. Animus

#### 1. Discriminatory Comments

Plaintiff contends that several of the supervisors at I.S. 93 made discriminatory statements to her. These comments include:

- █████████████████████████████████████████████████████

- In a meeting with Santos and Wright, Wright told Tomici "shut up little girl you are on probation and you will do as you were told"; he also told her she "didn't have rights" and "should keep [her] mouth shut" *id.* ¶ 124;

█ ████████████████████████████████████████████████████

█ ████████████████████████████████████████████████████

#### 2. Differential Treatment of Others

Tomici knows of "two or three" other teachers at I.S. 93 who returned to teaching ████ ████ Tomici Dep. 65. She testified that none of them were harassed by the supervisors at I.S. 93 upon their return to work. *Id.*

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ Tomici did not recall when the comment was made or if there was any other harassment of that teacher. *Id.*

### III. Procedural History

In March 2011, plaintiff filed a complaint with the United States Department of Labor,
Wage and Hour Division, alleging discrimination based on her rights under the FMLA. Pl. Decl.
Ex. 6 (DOE Resp. to U.S. Dep't of Labor, Wage and Hour Div.), CM/ECF No. 38-6, at 8 n.3. A
copy of that complaint has not been filed with the court.

Tomici commenced the instant action on May 4, 2011. Compl., May 4, 2011, CM/ECF
No. 1. An amended complaint was filed on July 28, 2011. Am. Compl., July 28, 2011, CM/ECF
No. 10.

She served the DOE with a notice of claim on August 8, 2011. Def. 56.1 ¶ 138. In her
notice of claim, Tomici characterized it as one "for unlawful termination in violation of the
Family Medical Leave Act and ███████████████████████████." Klepfish Decl. Ex.
VV (Personal Injury Claim Form, dated July 28, 2011), CM/ECF No. 27-48, at 2.

### IV. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and
if the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 250, (1986); *see also Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d
1, 5 (2d Cir.1999). The burden rests on the moving party to demonstrate the absence of a
genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18
(2d Cir.1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering
whether no genuine issue of material fact exists, all reasonable inferences are drawn in a light
most favorable to the non-moving party. *Vivenzio*, 611 F.3d at 106.

Where, as here, the non-moving party bears the burden of proof at trial, it is incumbent
upon that party to identify specific admissible evidence demonstrating a genuine issue for trial.

This evidence may not consist of "mere conclusory allegations, speculation or conjecture." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir.1996).

"A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." *Gallo v. Prudential Resid. Services*, 22 F.3d 1219, 1224 (2d Cir. 1994). "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.* Summary judgment nonetheless "remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994).

## V.    State and City Claims Dismissed

Tomici asserts claims for discrimination ▮▮▮▮▮▮▮▮▮▮▮ and medical leave under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296, and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.* DOE submits that these claims must be dismissed because Tomici failed to comply with the notice of claim requirements of New York Educational Law § 3813. Def.'s Mem. of L. in Supp. of Its Mot. for Summ. J. ("Def. Mem."), CM/ECF No. 29, at 8.

### A.  Law

Under Section 3831, no action or proceeding may be brought against any school district "unless a written verified claim upon which such . . . action is founded was presented to the governing body of said district or school within three months after the accrual of such claim." N.Y. Educ. Law § 3813(1); *see also Bucalo v. East Hampton Union Free Sch. Dist.*, 351 F. Supp. 2d 33, 34-35 (E.D.N.Y. 2005). Service of a notice of claim to the proper "governing body" of the school is a condition precedent to any action against a school district. *See Parochial Bus Sys., Inc. v. Bd. of Educ. of N.Y.*, 60 N.Y.2d 539, 547 (1983). The party bringing

19

suit bears the burden of "plead[ing] and prov[ing] compliance with the requirements of § 3813." *Grennan v. Nassau Cnty.*, No. 04-CV-2158, 2007 WL 952067, at *17 (E.D.N.Y. Mar. 29, 2007). Failure to satisfy Section 3831's requirements is "fatal" to a claim filed against a school board under state or city law, regardless of whether the claim is brought in state or federal court. *Id.*; *Smith v. N.Y. City Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011).

For purposes of complying with the notice of claim provision, a claim against a school district accrues "when it matures and damages become ascertainable." *Pope v. Hempstead Union Free Sch. Dist. Bd. of Educ.*, 598 N.Y.S.2d 814, 816 (2d Dep't 1993) (internal citations omitted). "[I]t is well established that the term 'claim accrued' is not necessarily equatable with the term 'cause of action accrued'." *Id. See also Field v. Tonawanda City Sch. Dist.*, 604 F. Supp. 2d 544, 572-73 (W.D.N.Y. 2009) (collecting cases). "[A]n employment discrimination claim accrues on the date that an adverse employment determination is made and communicated to plaintiff, and *the possibility that the determination may be reversed is insufficient to toll the limitations period.*" *Pinder v. City of New York*, 853 N.Y.S.2d 312, 313 (1st Dep't 2008) (emphasis added).

A charge filed with the Equal Employment Opportunity Commission and served on the proper "governing body" of a school should satisfy the notice of claim provision. *See, e.g., Brtalik v. South Huntington Union Free Sch. Dist.*, No. 10-CV-10, 2010 WL 3958430, at *5 (E.D.N.Y. 2010) (EEOC complaint satisfies Section 3813 notice "under the rare and limited circumstances where the EEOC charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district (and not a different arm of the district), and is served within the statutory time period").

It is assumed for purposes of this case that a complaint timely filed with the United States Department of Labor, Wage and Hour Section and, in the instant case, served on the DOE, satisfies Section 3813's notice of claim requirement.

While the court may, "in its discretion, extend the time to serve a notice of claim," any such "extension shall not exceed the time limited for the commencement of an action by the claimant against any district." N.Y. Educ. Law § 3813(2-a). New York law imposes a one-year statute of limitations for any action brought against a school district or board of education under Section 3813. *See* N. Y. Educ. Law § 3813(2–b).

### B. Application of Law to Facts

Community Superintendent Powis sent Tomici a letter on May 7, 2009 confirming her "discontinuance of probationary service and termination of . . . license" as of that date. Klepfish Decl. Ex. HH (Ltr. from Powis to Tomici, dated May 7, 2009), CM/ECF 27-34. That is the day on which plaintiff's claim accrued for purposes of Section 3813. The Community Superintendent's decision was *"final and . . . when made, in all respects terminate[d] the employment of a probationer* under Education Law § 2573(1)(a).'" *Kahn v. New York City Dep't of Educ.*, 18 N.Y.3d 457, 462 (2012) (quoting *Matter of Frasier v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 71 N.Y.2d 763, 767 (1988)) (emphasis and bracketed material in original). It is undisputed that the effect of the May 7, 2009 letter was to immediately take plaintiff off DOE's payroll. *See* Summ. J. Hr'g Tr. 27 ("THE COURT: But when the superintendent's letter came down, she was definitely not being paid[?] [PLAINTIFF'S ATTORNEY]: That's correct. She was not being paid."). Her damages—measured if by nothing else than loss of income—were ascertainable once termination was affirmed.

Any internal review pursued by plaintiff constituted "*an optional procedure* under which a teacher may ask [DOE] to reconsider and reverse [its] initial decision.'" *Kahn*, 18 N.Y.3d at 462 (quoting *Matter of Frasier*, 71 N.Y.2d at 767) (emphasis in original). Plaintiff's filing of a complaint with the United States Department of Labor, which—like any administrative review of her firing—was optional, *see* 29 U.S.C. § 2617(a)(2); *see also Manos v. Geissler*, 377 F. Supp. 2d 422, 427 (S.D.N.Y. 2005)—does not toll the accrual of Tomici's claim.

Tomici was required to serve a notice of claim on the DOE by August 7, 2009, which is three months following the day her employment as a probationary teacher was terminated. Plaintiff failed to do so. It is undisputed that plaintiff served a notice of claim on the DOE on August 8, 2011. Def. 56.1 ¶ 138. Plaintiff's amended complaint, filed on July 28, 2011, *before* Tomici filed a notice of claim with the DOE on August 8, 2011, does not allege service of a notice of claim upon the DOE. *See* Am. Compl., July 28, 2011, CM/ECF No. 10. Because Tomici's complaint with the United States Department of Labor was also filed after August 7, 2009, it cannot serve as a substitute for a Section 3813 notice of claim. Pl. Decl. Ex. 6 (DOE Resp. to U.S. Dep't of Labor, Wage and Hour Div., dated Apr. 15, 2011), CM/ECF No. 38-6, at 8 n.3.

The court declines to grant Tomici an extension of time to file a notice of claim. No such application was made until the filing of her papers in opposition to the DOE's motion for summary judgment. Any extension cannot "exceed the time limited for the commencement of an action by the claimant." N.Y. Educ. L. § 3813(2-a).

Tomici's state and city discrimination and retaliation claims are subject to a one-year statute of limitations. *Id.* § 3813; *Amorosi v. S. Colonie Indep. Cent. Sch. Dist.*, 9 N.Y.3d 367 (2007). Neither the filing of a notice of claim on state and city human rights claims, *Field v.*

*Tonawanda City Sch. Dist.*, 604 F. Supp. 2d 544, n. 21 (W.D.N.Y. 2009) (quoting *Koehnlein v. Jackson*, 784 N.Y.S.2d 431, 431 (4th Dep't 2004)) (internal quotations and alterations omitted). nor the filing of a federal administrative charge tolls the statute of limitations, *Smith v. Tuckahoe Union Free Sch. Dist.*, No. 03 Civ. 7951, 2009 WL 3170302, at *11 n.9 (S.D.N.Y. Sept. 30, 2009) ("With respect to state law torts, the overwhelming weight of authority is that the filing of an EEOC charge does not toll the statute of limitations.").

Tomici's state and city claims are time-barred and dismissed.

## VI.   FMLA Claims

The FMLA confers upon an eligible employee the right to take unpaid leave for up to twelve weeks for "a serious health condition that makes the employee unable to perform." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). Individuals are expressly provided with a private right of action in federal or state court for both equitable relief and money damages against an employer that violates rights protected by the FMLA. 29 U.S.C. § 2617(a)(2); *see also Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003).

Plaintiff brings two claims under the FMLA: (1) interference with her FMLA rights and (2) retaliation for exercising her FMLA rights.

### A. No Interference in Violation of the FMLA

### 1. Law

An FMLA interference claim must be supported by evidence that an "employer in some manner impeded the employee's exercise of his or her right[s]" under the FMLA. *Sista v. CDC Ixis N.A., Inc.*, 445 F.3d 161, 176 (2d Cir. 2006) (citing *King v. Preferred Technical Grp.*, 166

23

F.3d 887, 891 (7th Cir. 1999)); *see also Serby v. New York City Dep't of Educ.*, No. 09-CV-2727, 2012 WL 928194, at *6 (E.D.N.Y. Mar. 19, 2012); *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 535 (S.D.N.Y. 2009).

The Court of Appeals for the Second Circuit has not ruled on the standard to be applied to FMLA interference claims, *Sista, Inc.*, 445 F.3d at 175-76, but district courts within the Circuit have held that a plaintiff demonstrates a *prima facie* FMLA interference claim upon a showing that: "(1) she is an eligible employee under the FMLA; (2) defendant[] constitute[s] an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) that she gave notice to defendant[] of her intention to take leave; and (5) defendant[] denied her benefits to which she was entitled by the FMLA." *Esser v. Rainbow Advertising Sales Corp.*, 448 F. Supp. 2d 574, 580 (S.D.N.Y. 2006); *see also Ridgeway v. Royal Bank of Scotland Group*, No. 11-CV-976, 2012 WL 1033532, at *6 (D. Conn. Mar. 27, 2012) ("weight of authority" within Second Circuit adopts five-part *prima facie* test for interference claims); *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 193 (S.D.N.Y. 2011) (applying five part *prima facie* test for interference claim); *Debell v. Maimonides Med. Center*, No. 09-CV-3491, 2011 WL 4710818, at *7 (E.D.N.Y. Sept. 30, 2011) (same); *Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 336 (E.D.N.Y. 2010) (same); *Reilly*, 620 F. Supp. at 535 (same).

"Discouraging" an employee from exercising rights protected by the FMLA can amount to a denial of benefits in violation of the FMLA upon a showing that "the employer's purported acts of discouragement would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights." *Reilly*, 620 F. Supp. 2d at 535 (citing 29 C.F.R. § 825.220(b)); *Serby*, 2012 WL 928194, at *7; *Golden v. New York City Dep't of Environmental Protection*, No. 06-CV-1587, 2007 WL 4258241, at *3 (S.D.N.Y. Dec. 3, 2007).

24

## 2. Application of Law to Facts

Tomici's interference claim essentially rests on a theory of discouragement. The parties do not dispute—and it is assumed—that Tomici satisfies the first four elements of a *prima facie* FMLA interference claim. At issue is the fifth element: whether plaintiff was so discouraged from requesting FMLA leave that she was effectively denied her rights.

*Golden v. New York City Department of Environmental Protection* involved an FMLA interference claim based on allegedly "demeaning comments and gestures" regarding the plaintiff's "physical condition, thereby making [the plaintiff] believe his direct supervisor would deny any requests for leave." *Golden*, 2007 WL 4258241, at *3. The court ruled that the employer's allegedly objectionable comments and gestures could not support an FMLA interference claim because the plaintiff did not identify any occasions on which he did not assert FMLA rights because he "fear[ed] that leave would be denied." *Id.* While the court recognized that the comments and gestures at issue were "unprofessional and hurtful," the plaintiff failed to show "that the conduct would have deterred an employee of ordinary firmness, in a situation similar to his, from requesting or taking FMLA leave." *Id. See also Revlon*, 620 F. Supp. 2d at 537 ("[Supervisor's] complaint about the inconvenient date for [plaintiff's] cesarean section is not something that would have deterred an employee of ordinary firmness, in a similar situation from asserting his or her FMLA rights.").

Plaintiff orally requested information related to FMLA leave on March 26th or 27th of 2009 and submitted proper paperwork seeking FMLA leave on April 29, 2009. She contends that, following her initial correspondence with DePergola on March 27th, DePergola and the supervisors at I.S. 93 deliberately delayed processing of plaintiff's leave forms in order to "b[uy] them more time to send paperwork out to terminate me, by saying that I was being late in handing in medical documentation, when in fact I wasn't." Tomici Dep. 133, 141-44.

25

Tomici first contacted DePergola, the school's payroll secretary by telephone, on March 26th or 27th seeking "the protocol" for how to request medical leave. Tomici Dep. 129. Tomici was informed verbally about her need to "fill out an OP-160 [form] and FMLA application." Klepfish Decl. Ex. KK (Email from DePergola to Unknown Recipient, undated), CM/ECF No. 27-37. Tomici was then sent an email the morning of March 27th that reiterated the school's need for "*proper medical documentation* to confirm your leave." Klepfish Decl. Ex. LL (Email from DePergola to Tomici, dated Mar. 27, 2009), CM/ECF No. 27-38 (emphasis added). On April 1, 2009, Tomici submitted a doctor's note that lacked a diagnosis and was improperly dated; she was informed by DePergola that she would have to submit another doctor's note containing sufficient information to permit processing of a leave request. Def. 56.1 ¶¶ 117-18. Tomici did not submit a second doctor's note or a filled-out OP-160 until about a month later, on April 23, 2009. Klepfish Decl. Ex. QQ (Letter from Dr. Vinod K. Dhar, MD, dated Apr. 23, 2009), CM/ECF No. 27-43; Klepfish Decl. Ex. RR (Form OP 160, dated Apr. 23, 2009), CM/ECF No. 27-44.

No rational juror could find that DePergola's request for proper documentation discouraged Tomici from taking FMLA leave. There is no dispute that DePergola conveyed, both orally and in writing, the instructions Tomici would need to follow in order to take FMLA leave. With regard to DePergola's rejection of the first doctor's note submitted by Tomici, there is no evidence that there was anything unusual about DOE's need for a documented and specific medical explanation for Tomici's absence. No occasion has been identified where Tomici attempted to submit a properly filled-out OP-160 form and her FMLA request for leave was denied. Her FMLA leave request was approved June 12, 2009. Klepfish Decl. Ex. TT (Ltr. from DOR HR Connect to Tomici, dated June 12, 2009), CM/ECF No. 27-46. Given the resources

and bureaucratic nature of the DOE, any delay in approving Tomici's properly-submitted FMLA request was not unreasonable.

While the comments made by Santos, Fratangelo, Wright, and Rosato-Lopes may have been insensitive and even demeaning during a time of significant mental anguish, Tomici adduces no evidence that she delayed requesting FMLA leave before she began her extended absence on March 26, 2009. Nothing in the record suggests that Tomici contemplated or requested taking FMLA leave before March 26, 2009 or when any of the alleged "discouragement" occurred.

In sum, there is no evidence that anyone told Tomici not to take FMLA leave or took any actions that "would have deterred an employee of ordinary firmness, in a similar situation from asserting his or her FMLA rights." *Revlon*, 620 F. Supp. 2d at 537.

Tomici's FMLA interference claim is dismissed.

### B. No Retaliation for Taking FMLA Leave

#### 1. Law

The three-step *McDonnell Douglas* burden shifting analysis is applicable to FMLA retaliation claims. *Potenza v. City of New York*, 265 F.3d 165, 168 (2d Cir. 2004). A plaintiff bears the initial burden of making out a *prima facie* case of retaliation under the FMLA. She must first establish that (1) she exercised rights protected under the FMLA, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Id.*

A presumption of retaliation is created if the plaintiff meets her initial burden. *Di Giovanna*, 651 F. Supp. 2d at 203. The burden of production then shifts to the defendant to state a legitimate, non-discriminatory reason for the adverse employment action. *Id.* (citing *Farias v.*

*Instructional Sys.*, 259 F.3d 91, 98 (2d Cir. 2001)). "The employer's burden is 'merely one of production, not persuasion; it can involve no credibility assessment.'" *Esser*, 448 F. Supp. 2d at 581 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

The burden shifts back to the plaintiff if the defendant meets its burden of production. At this stage, "the presumption of discrimination drops out and the plaintiff has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). To reach a jury, the plaintiff must show that "the employer's decision was motivated, at least in part, by a discriminatory reason." *Forde v. Beth Israel Med. Center*, 546 F. Supp. 2d 142, 149 (S.D.N.Y. 2008) (citing *Fields v. N.Y. State Office of Mental Retardation & Dev. Disabilities*, 115 F.3d 116, 120-21 (2d Cir. 1997)). "'[T]he plaintiff may rely on evidence presented to establish the *prima facie* case, as well as additional evidence, which may include direct or circumstantial evidence of discrimination.'" *Cooper v. N.Y. State Nurses Assoc.*, 847 F. Supp. 2d 437, 447 (E.D.N.Y. 2012) (quoting *Lee v. Heritage Health & Hous., Inc.*, 2009 WL 3154314 (S.D.N.Y. Sept. 30, 2009)).

## 2. Application of Law to Facts

### a) *Prima Facie* Case

Existence of the first three prongs of a *prima facie* case of retaliation are not contested by defendant. Def. Mem. 5-6. As to the fourth, defendant argues that no inference of retaliation can arise because plaintiff "was on notice prior to her filing of the leave request on or about March 27, 2009 that her performance had deteriorated, that defendant considered her to have engaged in misconduct and that her probation could be discontinued." *Id.* at 5.

28

A close temporal connection between plaintiff's exercise of FMLA rights and the adverse an employment action can establish an inference of retaliation under the first step of the *McDonnell Douglas* test. *See Espinal v. Goord*, 558 F.2d 119, 129 (2d Cir. 2009) (citing *Clark Cnty. Sch. Distr. v. Breeden*, 532 U.S. 268, 273-74 (2001)). While district courts have found a gap of more than two months between protected activity and retaliation insufficient to draw an inference of discrimination, *see McGuire v. Warren*, No. 05-CV-2632, 2009 WL 3963941, at *12 (S.D.N.Y. Nov. 18, 2009) (citing cases), being terminated while on FMLA leave is generally considered sufficient to satisfy the fourth prong of the *prima facie* case, *see Reilly*, 620 F. Supp. 2d at 538 (citing *Martin v. Brevard Cnty. Public Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008)). *But c.f. Slattery v. Swiss Reinsurance America Corporation*, 248 F.3d 87, 95 (2d Cir. 2001) (no inference of retaliation when employee was dismissed one month after employer learned of EEOC complaint because dismissal was "both part, and the ultimate product of, an extensive period of discipline" spanning five months).

Evidence supporting an inference of retaliatory intent may be "anemic at best," and, at this stage, plaintiff's "burden is 'minimal.'" *Serby*, 2012 WL 928194, at *8. It is undisputed that Tomici was terminated while on FMLA leave. Tomici has met her initial burden.

### b) Legitimate, Nondiscriminatory Justification

Defendant proffers sufficient evidence to meet its burden of articulating a legitimate nondiscriminatory reason for plaintiff's termination. The numerous documented instances of Tomici's misconduct all predate her FMLA application and suffice to establish a nondiscriminatory, *bona fide* reason for her termination. *See* Part II, D-H, *supra*.

### c) Pretext

Defendant having satisfied its burden to provide a legitimate, nondiscriminatory justification for terminating Tomici, the burden shifts back to Tomici to adduce admissible evidence that would permit a reasonable jury to find that defendant's nondiscriminatory basis for its adverse action is pretextual and that defendant's true intention was to retaliate for plaintiff's FMLA leave.

Tomici "need not show that [DOE's] proffered reason was false or played no role in the decision to terminate [her], but only that it was not the only reason, and that [her] filing for FMLA leave was at least one motivating factor." *Di Giovanna*, 651 F. Supp. 2d at 206.

Plaintiff fails to carry her burden. Her argument is that defendant's reasons for disciplining and ultimately terminating her are pretextual because of the close proximity between the adverse actions and "███████ and affiliated absences." Pl. Mem. 10; Summ. J. Hr'g Tr. 26-27. Combined with the alleged (but disputed) comments made by Tomici's supervisors about the need for her "to get over" ███████, this evidence might arguably suggest discriminatory intent on the basis of plaintiff's ███████—but not her exercise of rights provided and protected by the FMLA.

Mere temporal proximity between Tomici's FMLA leave and termination is insufficient to create a material dispute on the issue of pretext. "'[S]omething more is required to show evidence of discriminatory intent once defendants have articulated a legitimate reason for the adverse action.'" *Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d 272, 278 (S.D.N.Y. 2011) (quoting *Behringer v. Lavelle Sch. for the Blind*, No. 08-CV-4899, 2010 WL 5158644, at *16 (S.D.N.Y. Dec. 17, 2010)). But the evidence does not show that anything more exists. None of the alleged comments made by plaintiff's supervisors create a question of fact on the issue of whether defendant's reasons for plaintiff's termination were pretextual and not actually

retaliatory; nor does any of the evidence establish that plaintiff was treated differently because she took FMLA leave.

In light of the well-documented instances of plaintiff's poor job performance prior to her request for FMLA leave, it cannot be shown that plaintiff's termination was connected to her FMLA leave.

The FMLA retaliation claim is dismissed.

### VII.   Conclusion

The case is dismissed.

No costs or disbursements are ordered.

SO ORDERED.

December 19, 2012
Brooklyn, New York

31